**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SHEILA LAND, Individually and as Guardian of RAZHON ANDRE BANKS, a minor and Charles J. Durante, Esq., Executor of the Estate of Charles Andre Banks, | ) ) ) ) ) | C.A. No.:  07C-160-UNA |
| Plaintiffs, | ) ) | JURY TRIAL OF SIX DEMANDED |
| v. | ) ) | |
| THE CITY OF DOVER and JOHN DOES 1-5 In their Individual and Official capacities, | ) ) ) | |
| Defendants. | ) | |

---

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS COUNTS
I, II AND VI OF PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

DANIEL A. GRIFFITH, ESQUIRE
Delaware Bar I.D. No. 4209
MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN
1220 N. Market Street
P.O. Box 8888
Wilmington, DE 19899-8888
(302) 552-4317
*Attorney for Defendants, The City of Dover
and John Does 1-5*

Dated:  April 20, 2007

## Table of Contents

Page

I.  STATEMENT OF THE NATURE OF THE CASE..................................................................4

II.  SUMMARY OF THE ARGUMENT......................................................................................4

III.  STATEMENT OF UNDISPUTED FACTS ...........................................................................6

IV.  LEGAL ARGUMENT ..........................................................................................................7

    A.  Since Plaintiffs Have Specifically Raised Claims Under The Fourth Amendment To The United States Constitution, Their More Generalized "Substantive Due Process" Claims Must Be Dismissed As A Matter Of Law........................................................7

    B.  Since the City of Dover is Immune From Vicarious Liability Claims Pursuant to the Delaware County and Municipal Tort Claims Act, Plaintiffs' "Wrongful Death and Survival" Claim Must Be Dismissed..........................................................................11

V.  CONCLUSION....................................................................................................................13

## Table of Authorities

## Cases

Bright v. Westmoreland County, 443 F. 3d 276, 281 (3d Cir. 2006) ..............................................8

Brown v. Pa. Dep't of Health Emergency NUD Servs. Training Inst., 318 F. 3d 473, 478 (3d Cir. 2003) ......................................................................................................................................8

Carr v. Town of Dewey Beach, 730 F. Supp. 591 (Del. 1990) ...................................................12

Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)...............5, 10

Kaucher v. County of Bucks, 455 F. 3d 418 (3d Cir. 2006) .........................................................8

Kneipp v. Tedder, 95 F. 3d 1199, 1201 (3d Cir. 1996) ...............................................................7

Sanford v. Styles, et al, 456 F. 3d 298, 304-305 (3d Cir. 2006)...................................................8

Sussex County v. Morris, 610 A2d. 1354, 1357 (Del. Supr. 1992).............................................11

Thomas v. Wilmington Police Department, C.A. No. 92C-03-244 (Del. Super 1994)...............12

Ward  v. Taylor, et al, 2006 U.S. Dis. LEXIS 14135 (Jordan, Kent A. U.S.D.J., decided March 30, 2006) (See Exhibit "B") .............................................................................................5, 9, 10

Washington v. Wilmington Police Department,.........................................................................12

Washington v. Wilmington Police Department, 1995 Del. Super. LEXIS 472 ..........................12

Whitley v. Alberts, 475 U.S. 312, 327, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)......................10

## I.      STATEMENT OF THE NATURE OF THE CASE

On the afternoon of April 17, 2005, Charles Andre Banks consumed a lethal dose of illegal drugs, including PCP (Phencyclidine) and marijuana.  Officers of the City of Dover Police Department arrested Mr. Banks after he had consumed these drugs.  Mr. Banks died from respiratory distress brought on by his drug overdose after he was arrested.

Mr. Banks' mother (Sheila Land), son, Razhon Banks and executor, Charles J. Durante, Esquire filed this action alleging that the Dover police officers' detention of Mr. Banks deprived him of necessary medical attention in violation of his rights under the Fourth Amendment to the United States Constitution.  (See Counts III and IV of Plaintiffs' Complaint, attached as Exhibit "A").  Plaintiffs also contend that the City of Dover is liable for these Constitutional deprivations because the City had a "policy or custom that was a moving force behind the unconstitutional actions of its police officers".  (See Exhibit "A", Count V).  These claims (Counts III, IV and V) are not the subject of the instant motion.

In addition to the Counts III, IV and V of Plaintiffs' Complaint, however, Plaintiffs have asserted claims of Substantive Due Process violations (Counts I and II) and a state law claim for wrongful death/survival (Count VI).  Since these additional claims are  not cognizable as a matter of law under the circumstances, Defendants hereby move to dismiss Counts I (state created danger doctrine) II (Substantive Due Process) and VI (wrongful death and survival) pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.      SUMMARY OF THE ARGUMENT

Plaintiffs' Complaint is brought pursuant to 42 U.S.C. § 1983 and contends that the Dover police officers' arrest and detention of Charles Andre Banks on April 17, 2005 unreasonably deprived Mr. Banks of necessary medical attention and thereby violated his rights under the Fourth Amendment to the United States Constitution.  (See Exhibit "A", Counts III and IV).

Plaintiffs also contend that the City of Dover is liable for this Constitutional deprivation because the "City had a policy or custom that was a moving force behind the unconstitutional actions of its police officers". (Count V).

In addition to these Counts, Plaintiffs have included in their Complaint claims for Substantive Due Process violations (Counts I and II). These claims are not cognizable as a matter of law where, as here, the Fourth Amendment is more specifically tailored to the alleged violation of Mr. Banks' rights. *Ward v. Taylor, et al*, 2006 U.S. Dis. LEXIS 14135 (Jordan, Kent A. U.S.D.J., decided March 30, 2006) (See Exhibit "B"). See also *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). Since plaintiffs have included claims for the violation of Mr. Banks' rights under the Fourth Amendment to the United States Constitution, claims relating to "the more generalized notion of 'Substantive Due Process' must be the guide for analyzing these claims". *Ward, supra,* quoting *Graham v. Connor, supra.*

In addition to their claims arising out of the United States Constitution, Plaintiffs' Complaint also includes a state law claim for wrongful death/survival (See Exhibit "A", Count VI). Defendant, City of Dover, is completely immune from liability for this claim pursuant to the Delaware County and Municipal Tort Claims Act, 10 Del. C. § 4011(a). The "wrongful death/survival" claims are therefore improperly asserted as to the City of Dover.

In sum, given their lack of a factual and/or legal basis, Counts I, II and VI of Plaintiffs' Complaint must be dismissed as a matter of law pursuant to Fed. R. Civ. P. 12(b)(6).

III.       **STATEMENT OF UNDISPUTED FACTS**

1.       Plaintiffs' Complaint was filed on or about March 21, 2007.  (See Exhibit "A").  The following facts are based purely and exclusively upon the allegations set forth in Plaintiffs' Complaint.

2.       On April 17, 2005, Charles Andre Banks, consumed an overdose of illegal drugs, particularly PCP (Phencyclidine) and marijuana.  (See Exhibit "A", paragraphs 10, 15).  During that time, he was arrested and taken into custody by officers of the City of Dover Police Department.  Mr. Banks ultimately died from respiratory distress caused by the overdose.  (See Exhibit "A").

3.       In their Complaint, Plaintiffs contend that Mr. Banks' arrest and detention violated his rights under the Fourth Amendment to the United States Constitution, specifically by unreasonably depriving him of required medical attention.  (See Exhibit "A", Counts III and IV).  Plaintiffs also contend that the City of Dover is liable for this Constitutional deprivation since the "City had a policy or custom that was a moving force behind the unconstitutional actions of its police officers".

4.       In addition to asserting claims under the Fourth Amendment and alleging municipal liability under 42 U.S.C. § 1983, Plaintiffs have also asserted more generalized claims of "Substantive Due Process" violations (Exhibit "A", Counts I and II) and a state law claim for wrongful death/survival against the City of Dover (Exhibit "A", Count VI).  Defendants move to dismiss these latter

claims (Counts I, II and VI) for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

## IV.    LEGAL ARGUMENT

### A.    Since Plaintiffs Have Specifically Raised Claims Under The Fourth Amendment To The United States Constitution, Their More Generalized "Substantive Due Process" Claims Must Be Dismissed As A Matter Of Law.

Plaintiffs have specifically alleged that the Defendants' arrest and detention of Mr. Banks violated his rights under the Fourth Amendment to the United States Constitution:

### COUNT III – FOURTH AMENDMENT – EXCESSIVE FORCE

**29.    Defendants' violated Mr. Banks' rights under the Fourth Amendment to the United States Constitution...by using excessive force under the totality of the circumstances...**

### COUNT IV – FOURTH AMENDMENT – UNREASONABLE SEIZURE

**34.    Defendants' subjected Mr. Banks to unreasonable seizure in violation of his rights under the Fourth Amendment to the United States Constitution... by lacking probable cause and by lacking exigent circumstances.  (See Exhibit "A", Counts III and IV).**

In addition to these specific Fourth Amendment claims, Plaintiffs have asserted claims for "Substantive Due Process" violations under the Fourteenth Amendment to the United States Constitution styled as "State Created Danger Doctrine" and "Substantive Due Process and Liberty Interests" claims.  (See Exhibit "A", Counts I and II).  Given their assertion of specific Fourth Amendment claims, Plaintiffs cannot also proceed on more general claims of Substantive Due Process violations under the Fourteenth Amendment.

In *Kneipp v. Tedder*, 95 F. 3d 1199, 1201 (3d Cir. 1996), the United States Court of Appeals for the Third Circuit first adopted the "State Created Danger Theory" as a mechanism by

which plaintiffs may establish Constitutional violations under 42 U.S.C. § 1983.  The Court held

that liability may attach where the state acts to create or enhance a danger that deprives the

plaintiff of his or her Fourteenth Amendment right to Substantive Due Process.  *Id*. at 1205; see

also *Brown v. Pa. Dep't of Health Emergency NUD Servs. Training Inst.*, 318 F. 3d 473, 478 (3d

Cir. 2003).

      To prevail on a State-Created Danger claim in the Third Circuit, a plaintiff must prove

the following four (4) elements:

> 1. The harm ultimately caused was foreseeable and fairly direct;

> 2. The state actor acted with a degree of culpability that shocks the conscience;

> 3. A relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

> 4. The state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Sanford v. Styles, et al*, 456 F. 3d 298, 304-305 (3d Cir. 2006), citing *Bright v.*

*Westmoreland County*, 443 F. 3d 276, 281 (3d Cir. 2006).

      The "state created danger" doctrine is essentially a claim that the defendants allegedly

violated the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

See, *Sanford v. Styles, et al, supra; Kaucher v. County of Bucks*, 455 F. 3d 418 (3d Cir. 2006).

However, where, as here, a claimant asserts a specific claim under the Fourth Amendment to the United States Constitution, additional, generalized claims under the Substantive Due Process Clause of the Fourteenth Amendment are inappropriate. *Ward v. Taylor, supra.*

The Opinion of the Honorable Kent A. Jordan, U.S.D.J. in the *Ward* case is dispositive of plaintiffs' Substantive Due Process/Fourteenth Amendment claims (Counts I and II). In *Ward*, plaintiff was an inmate at the Delaware Correctional Center ("DCC") who was attacked and severely beaten by another inmate. *Ward* alleged that the defendants (the State of Delaware and its employees) violated his Eighth Amendment right to be free from cruel and unusual punishment. He also asserted that the state violated his Substantive Due Process rights under the Fourteenth Amendment by creating an opportunity for danger that would otherwise not have existed (i.e., a "State Created Danger" claim). (See Exhibit "B"). In reviewing the manner in which the United States Supreme Court has addressed claimants' assertions of both specific Constitutional violations and more generalized Fourteenth Amendment violations, Judge Jordan observed:

> **D. Ward's Substantive Due Process Claim Asserting a State Created Danger.**
>
> Finally, Defendants move to dismiss Ward's claim that the State violated his Substantive Due Process rights. Ward alleges that the Defendants, by acting with willful disregard for his safety, created an opportunity for danger that otherwise would not have existed and thus acted in a manner shocking to the conscience and violating the Due Process Clause of the Fourteenth Amendment. (citations omitted). The Defendants challenge this claim by **correctly** asserting that Ward cannot rely on Substantive Due Process rights when the Eighth Amendment is more specifically tailored to the alleged violations of his rights. (citations omitted). (emphasis added). (See Exhibit "B", p. 8-9).

Judge Jordan then noted the United States Supreme Court's support for this conclusion:

> The Supreme Court has held that when there is an "explicit textual source of Constitutional protection" against physically intrusive governmental conduct alleged by a plaintiff, "that Amendment, not the more generalized notion of 'Substantive Due Process' must be the guide for analyzing these claims". See *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (holding that claim of excessive force used by officers in making arrests must be brought under more directly applicable Fourth Amendment and not Fourteenth Amendment): *Whitley v. Alberts*, 475 U.S. 312, 327, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986) (holding that the "Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners"). Because Ward is a convicted inmate, the treatment he alleges must be challenged under the Eighth Amendment, and thus the Defendants' Motion to Dismiss the Substantive Due Process claim will be granted. (See Exhibit "B", p. 9).

Here, the Fourth Amendment to the United States Constitution is an "explicit textual source of Constitutional protection" against physically intrusive governmental conduct alleged by the Plaintiff. Indeed plaintiffs have specifically cited to the Fourth Amendment in Counts III and IV (see Exhibit "A"). As such, "that Amendment, not the more generalized notion of 'Substantive Due Process', must be the guide for analyzing these claims". <u>Ward</u>, quoting *Graham v. Connor, supra.*

For all of the foregoing reasons, it is respectfully requested that this Honorable Court dismiss Plaintiffs' Substantive Due Process claims (Counts I and II) pursuant to Fed. R. Civ. P. 12(b)(6).

**B.**  **Since the City of Dover is Immune From Vicarious Liability Claims Pursuant to the Delaware County and Municipal Tort Claims Act, Plaintiffs' "Wrongful Death and Survival" Claim Must Be Dismissed.**

Under the County and Municipal Tort Claims Act (hereinafter "Tort Claims Act"), a governmental entity is generally immune from liability for its tortious acts or omissions.  10 Del. C. § 4011 (a) of the Tort Claims Act reads, in pertinent part, "except as otherwise expressly provided by statute, all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery of damages…".  10 Del. C. § 4011 (b) enumerates six (6) examples of the range of activities for which local governmental entities are immune.  The statute provides that this list is inclusive (i.e., "…examples and should not be interpreted to limit the general immunity provided by the section") rather than exclusive.

In Del. C. § 4012, the Tort Claims Act provides three (3) exceptions to this broad grant of immunity.  The activities enumerated in § 4012 are an inclusive list and are the only activities to which municipal liability is waived.  *Sussex County v. Morris*, 610 A2d. 1354, 1357 (Del. Supr. 1992).  Inasmuch as these exceptions relate to matters such as motor vehicles (exception number 1), construction of buildings (exception number 2) and environmental matters (exception number 3), there can be no reasonable argument that they apply here.

Since none of the exceptions listed in Del. C. § 4012 apply, the City of Dover is immune from claims arising under state law (such as Plaintiffs' claim for wrongful death/survival) pursuant to 10 Del. C. § 4011.

In fact, the City of Dover's immunity under the Tort Claims Act for plaintiffs' state law wrongful death/survival claim is evidenced not only by the plain and unambiguous terms of the statute, but also by case law which has addressed the issue under circumstances similar to the instant matter.

In *Carr v. Town of Dewey Beach*, 730 F. Supp. 591 (Del. 1990), this Court found that the Tort Claims Act was applicable to plaintiffs' state law claims for malicious prosecution, abuse of process, false arrest and intentional infliction of emotional distress. In *Thomas v. Wilmington Police Department*, C.A. No. 92C-03-244 (Del. Super 1994) (referenced in *Washington v. Wilmington Police Department*, 1995 Del. Super. LEXIS 472 (decided September 18, 1995) (Exhibit "C"), plaintiff asserted state law claims for false arrest, false imprisonment and invasion of privacy following his arrest on an erroneous warrant. The Superior Court of Delaware held that the Tort Claims Act precluded plaintiff's claims as she could not show that any exception listed in § 4012 was applicable to her case.

In *Washington v. Wilmington Police Department, supra,* the Superior Court of Delaware more squarely addressed the potential liability of a governmental entity for the actions of its officers for state law claims under the Tort Claims Act. In *Washington*, officers of the City of Wilmington Police Department received a report of a woman with a gun in an area where plaintiff was walking. Ms. Washington claimed that an officer of the Department stopped her, yelled at her and forcibly pushed her against the wall, ultimately causing her suffer a stroke. Like plaintiffs' wrongful death/survival claim in this case (Count VI), Ms. Washington's Complaint alleged a variety of state law claims, including false arrest and false imprisonment.

In analyzing the applicability of the immunities available to the Department under the Tort Claims Act, the Superior Court of Delaware concluded:

> The Court is persuaded that the City of Wilmington enjoys municipal immunity from tortious acts of (the officer). § 4011 is expansive in scope and covers "any and all tort claims". Conversely, the exceptions are narrowly drawn and are clearly inapplicable to the case at hand. There is no statutory exception for those tort claims involving "excessive force". Furthermore, there is no statutory exception for those claims based on the principles

> of *respondeat superior*. In fact, § 4011 (c)…expressly separates the tortious acts of employees of the municipality from the municipality itself. Furthermore, a municipality is an entity that can only act through the actions of its employees and agents. If it could be held liable for the acts of its employees under *respondeat superior*, the Tort Claims Act would be rendered meaningless. (Plaintiff) cannot point to a statutory exception enumerated in § 4012, therefore summary judgment is granted for the City of Wilmington. (See Exhibit "C", p. 6).

Obviously, with respect to Plaintiffs' state law claim for "wrongful death/survival", plaintiffs can only predicate this claim against the City of Dover on the City of Dover's alleged liability for the actions of its officers. Plaintiffs contend that the City is liable on the theory *respondeat superior* for the conduct of its officers. However, both the language of the Tort Claims Act and the case law applying the Tort Claims Act to the circumstances of this type of case makes clear that the City of Dover enjoys absolute immunity from the "wrongful death/survival" claim set forth in Plaintiffs' Complaint at Count VI. As a consequence, Count VI of Plaintiffs' Complaint must be dismissed as a matter of law.

## V.    CONCLUSION

For all of the foregoing reasons, it is respectfully requested that this Honorable Court dismiss Counts I, II and VI of Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

/s/ *Daniel A. Griffith, Esquire  DE ID 4209*

_____

DANIEL A. GRIFFITH, ESQUIRE

\15_A\LIAB\DAGRIFFITH\LLPG\420593\HXRUSSO\20021\00144

**EXHIBIT "A"**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SHEILA LAND, Individually and as Guardian    :
of RAZHON ANDRE BANKS, a minor, and    :
Charles J.Durante, Esq, Executor of the Estate    :
of Charles Andre Banks    :
    :
         Plaintiffs,    :    C.A. No.:
    :
         v.    :    JURY TRIAL OF SIX DEMANDED
    :
THE CITY OF DOVER and JOHN DOES 1-5,    :
in their Individual and Official capacities    :
    :
         Defendants.    :

## COMPLAINT

    1. This is an action, pursuant to 28 U.S.C. § 1983, and the Fourth and Fourteenth

Amendments to the United States Constitution 28 U.S.C. § 1332, State law, statutory and

common, for damages as the result of the death of Charles Andre Banks on April 17, 2005 at the

hands of the Defendants and while in their custody and control.

### JURISDICTION AND VENUE

    2. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331, 1332 and

supplemental jurisdiction over pendent state law claims, pursuant to 28 U.S.C. § 1367.

    3. Venue in this District is proper pursuant to 28 U.S.C. § 1391.

### THE PARTIES

    4. Charles Andre Banks was, at all times relevant hereto, a resident and citizen of the

State of New York. He was killed on April 17, 2005 in Dover, Delaware. He was the natural

father of Plaintiff Razhon Andre Banks ( DOB: 1/26/01) and the natural son of Plaintiff Sheila

Land.

5. Sheila Land is a resident and citizen of the State of New York and the mother of Charles Banks. She is the Guardian of Razhon Andre Banks the natural son of Charles Andre Banks. Ms. Land has sole custody of Razhon Andre Banks and is solely responsible for his support and maintenance.

6. Razhon Banks is a resident and citizen of the State of New York and the son of Charles Andre Banks.

7. Charles J. Durante, Esquire is an attorney licensed to practice in the State of Delaware and the Executor of the Estate of Charles Andre Banks.

8. Defendant, City of Dover is a municipal corporation of the State of Delaware, located in Kent County, Delaware. It employed, at all times relevant hereto, John Doe Defendants as Police Officers within the City's Department of Police. The government of the City of Dover is vested in a Mayor and City Council pursuant to its Charter, § 4.

9. Defendant John Does, at the time of Charles Andre Banks' detention and death, were law enforcement officers employed by Defendant the City of Dover the City's Police Department.

## THE FACTS

10. In the afternoon of April 17, 2005 Charles Andre Banks stumbled on foot into the parking lot of Bay Health Medical Center, a hospital in the City of Dover. ( Hospital).

11. He was, inter alia, in acute distress, incoherent, foaming at the mouth, unable to speak, walk or control his actions. He was in obvious need of emergency medical treatment and in a life threatening condition requiring immediate medical care including but not limited to

intubation.

12. Medical personnel at the Hospital observed his condition and immediately responded to the parking lot in order to render immediate and necessary emergency care and treatment.

13. Medical personnel placed Mr. Banks in a wheelchair so he could be taken into the Emergency Room of the Hospital and receive such treatment. The hospital was less than 100 yards from where they found Mr. Banks and assisted him.

14. Mr. Banks was not a threat or danger to the medical personnel or to others and was not acting violently or in a manner that required any restraints.

15. At the time, Mr. Banks was in extreme respiratory distress having consumed PCP ( Phencyclidine) and Marijuana and required immediate medical intervention, including intubation, which medical treatment would have saved his life.

16. Defendant John Does arrived at the Hospital Emergency Room as the Hospital personnel were in the process of taking Mr. Banks into the Hospital so that he could receive medical treatment.

17. Defendant John Does forcibly and violently removed Mr. Banks from possession, care and custody of the medical personnel despite, and over, the repeated and urgent objections of the medical personnel who told the Defendants that he was in dire need of immediate medical intervention and treatment.

18. Defendant John Does ignored the clear and urgent objections of the medical personnel and deliberately prevented Mr. Banks from receiving life-saving treatment.

19. Defendants forcibly and excessively restrained Mr. Banks and threw him into their police vehicle telling the medical personnel at the Hospital that he "was ours now" and that if he needed medical treatment, as the medical personnel were pleading he needed, they would bring

him back later to the Hospital.

20. Mr. Banks was taken to the Defendant City Police Station and, because he was deprived of the necessary and urgent medical treatment, which they knew he needed because they were told he needed such treatment, he went into respiratory failure and was transported by paramedics back to the Hospital where efforts to save him were unsuccessful and too late and he died.

## COUNT ONE- STATE CREATED DANGER DOCTRINE

21. Defendants denied Mr. Banks substantive Due Process under the Fourteenth Amendment to the United States Constitution , in violation of 28 U.S.C. § 1983.

22. The harm to Mr. Banks was foreseeable and fairly direct.

23. Defendants were acting under color of state law and they acted in willful disregard for the safety of Mr. Banks and their conduct shocks the conscience. They did not need to act with urgency in arresting Mr. Banks and taking custody of him. Defendants consciously disregarded a substantial risk that Mr. Banks would be seriously harmed by their actions.

24. There was a relationship between the Defendants, the State and Mr. Banks because he was a foreseeable victim either individually or as a member of a discrete class, i.e., individuals such as Mr. Banks who are known to need urgent and life-saving medical care and are deliberately denied such care.

25. Defendants used their authority to create an opportunity for danger that otherwise would not have existed.

**COUNT TWO-SUBSTANTIVE DUE PROCESS AND LIBERTY INTERESTS**

**FAILURE TO PROVIDE MEDICAL CARE**

26. Plaintiffs incorporate by reference paragraphs 1-25 and reassert them as if fully set forth herein.

27. Defendants deprived Mr. Banks of substantive due process and his liberty under the Fourteenth Amendment to the United States Constitution in violation of 28 U.S.C. § 1983 by preventing him from receiving known and needed medical care, resulting in, and proximately causing, his death.

**COUNT THREE- FOURTH AMENDMENT- EXCESSIVE FORCE**

28. Plaintiffs reassert paragraphs 1-27 and incorporate them as if fully set forth herein.

29. Defendants' violated Mr. Banks' rights under the Fourth Amendment to the United States Constitution, in breach of 28 U.S.C. § 1983, by using excessive force under the totality of the circumstances.

30. Defendants' seizure of Mr. Banks, which resulted in them preventing, and denying, medical care to Mr. Banks was objectively unreasonable.

31. Mr. Banks posed no immediate threat to the safety of the Defendants or others, he was not actively resisting arrest or attempting to evade arrest, he was not violent or dangerous.

32. Defendant officers used deadly force by preventing Mr. Banks from receiving life-sustaining medical treatment and denied his constitutional rights to life and liberty.

**COUNT FOUR- FOURTH AMENDMENT-UNREASONABLE SEIZURE**

33. Plaintiffs reassert paragraphs 1-32 and incorporate them as if fully set forth herein.

34. Defendants subjected Mr. Banks to an unreasonable seizure in violation of his rights under the Fourth Amendment to the United States Constitution, in breach of 28 U.S.C. § 1983, by lacking probable cause and by lacking exigent circumstances.

## COUNT FIVE- FAILURE TO TRAIN

35. Plaintiffs reassert paragraphs 1-34 and incorporate them as if fully set forth herein

36. Defendant City had a policy or custom that was a moving force behind the unconstitutional actions of its police officers.

37. The training of the Defendant police officers was constitutionally inadequate and the failure of the Defendant City to adequately train said officers amounted to deliberate indifference to the rights of persons such as Mr. Banks with whom they come into contact.

38. The failure of the Defendant officers to provide medical care to Mr. Banks was the result of inadequate training by the Defendant City and the need for more training in such circumstances is obvious as is the likelihood that the inadequate training will, and did, lead to the violation of Mr. Banks' constitutional rights. The Defendant City's policymakers were deliberately indifferent to the need for more or different training.

39. The Defendant City had a policy or custom of taking a person in custody to police headquarters even though it is known, or it is obvious, that he needs medical care and treatment prior to such transportation..

40. Upon information and belief, Defendant policy makers, including the City Council and/or Mayor, had actual or constructive knowledge of prior incidents or conduct where persons in custody who exhibited excited delerium or were under the influence of drugs/alcohol and exhibited behavior requiring medical treatment were denied such treatment or such treatment was

delayed pending transportation to the police station.  Those incidents were likely to result in

future violations of constitutional rights and the failure of Defendant City to train police officers

to recognize the need for such treatment constituted tacit approval or deliberate indifference to

the need to ensure that medical care is provided, representing a policy or custom of the

Defendant City.

41. Where the need for medical treatment is made  known to Defendant City's police

officers and they refuse such treatment and actually prevent it, the inadequacy of their training is

obvious and so likely to result in a violation of the constitutional rights of the individual in need

of such treatment that Defendant City's policy makers' failure to train such officers to permit or

obtain medical treatment constituted deliberate indifference to those constitutional rights.


## COUNT SIX- WRONGFUL DEATH AND SURVIVAL

42. Plaintiffs reassert paragraphs 1-41 and incorporate them as if fully set forth herein.

43. Individual Defendants in their individual capacities are liable for the wrongful death

of Mr. Banks and for survival claims by his estate, pursuant to 10 Del.C. §§ 3701 et. seq.,

because their acts, neglect, default, and negligence caused Mr. Banks pain and suffering and

caused his death.

44. Individual Defendants acted either beyond the scope of their employment or acted

with wanton negligence or wilful or malicious intent in preventing Mr. Banks from receiving

medical care and ignoring the pleas or advice of the medical personnel at the Hospital.

45. The constitutional rights of Mr. Banks, which were violated by Defendants, were

clearly established.   Defendant officers' actions were unlawful in light of clearly established law

and the information they possessed at the time they apprehended Mr. Banks and took him from

the medical personnel.

46.  Defendant officers intentionally inflicted emotional distress upon Mr. Banks and negligently inflicted emotional distress upon him causing him physical injury and death.

**WHEREFORE** Plaintiffs pray that judgment be entered in their favor and that they be awarded damages against the Defendants, jointly and severally, <u>inter alia</u>, compensatory damages, punitive damages against the Individual Defendants, costs and expenses, including attorneys' fees, and be granted such other and further relief as may be just and appropriate.

**RICHARD R. WIER, JR., P.A.**

      /s/Richard R. Wier Jr.
Richard R. Wier, Jr. (#716)
 Two Mill Road, Suite 200
Wilmington, DE 19806
(302)888-3222
 Attorneys for Plaintiffs

Dated: March 21, 2007

EXHIBIT "B"

52 of 171 DOCUMENTS

**TIMOTHY WARD, Plaintiff, v. STANLEY TAYLOR; PAUL HOWARD; THOMAS CARROLL; JOHN SALAS; JESSICA DAVIS-BARTON; CERTAIN UNKNOWN INDIVIDUAL EMPLOYEES OF THE STATE OF DELAWARE DEPARTMENT OF CORRECTIONS; and STATE OF DELAWARE DEPARTMENT OF CORRECTIONS, Defendants.**

**Civil Action No. 04-1391-KAJ**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2006 U.S. Dist. LEXIS 14135*

**March 30, 2006, Decided**

**COUNSEL:** [*1] Jeffrey K. Martin, Esquire, Margolis Edelstein, Wilmington, Delaware; Herbert G. Feuerhake, Esquire, The Law Office of Herbert G. Feuerhake, Wilmington, Delaware, for Plaintiff.

Michael F. Foster, Esquire, Department of Justice, Wilmington, Delaware, for Defendants.

**JUDGES:** Kent A. Jordan, District Judge.

**OPINION BY:** Kent A. Jordan

**OPINION:**

**MEMORANDUM OPINION**

March 30, 2006
Wilmington, Delaware

**JORDAN, District Judge**

**I. INTRODUCTION**

This case involves claims alleging a violation of an inmate's constitutional rights by a corrections facility and several correctional officers. Before me is a Motion to Dismiss for failure to state a claim upon which relief can be granted (Docket Item ["D.I."] 17; the "Motion"), filed by the defendants, Stanley Taylor, Paul Howard, Thomas Carroll, John Salas, Jessica Davis-Barton, certain unknown individual employees of the State of Delaware Department of Corrections, and the Department of Corrections itself (the "Department") (collectively the "Defendants").

Jurisdiction is appropriate under *42 U.S.C. §§ 1983 and 1985* and *28 U.S.C. § 1331*. For the reasons that follow, the Motion [*2] will be granted in part and denied in part.

**II. BACKGROUND** n1

A. The Attack on Ward

While serving a three-year sentence for armed burglary, the plaintiff, Timothy Ward ("Ward") was an inmate at the Delaware Correctional Center ("DCC") in the minimum security T-Building. (D.I. 1 at P 10.) In or around May of 2004, another inmate, Robert Johnson ("Johnson"), was transferred to the T-Building after attempting to commit suicide by jumping out of a second-story window in the building where he was previously held. (*Id.* at P 12.)

n1 The following background information is based on Ward's allegations, which are assumed to be true for the purposes of this *12(b)(6)* motion.

On July 10, 2004, due to threats he made to a guard and disruptive behavior in the evenings, Johnson was escorted to the infirmary for his mental condition to be evaluated, but no medical personnel were present at the time. (*See id.* at P 16.) Johnson was then released into the prison population, which was having recreational [*3] time in the "yard". (*Id.* at P 17.) Defendant Salas and an

individual named Lovett were the correctional officers responsible for the oversight of the recreation break; however, they were inside the T-Building using a computer. n2 (*Id.* at PP 19, 22.) Ward was in the back of the yard finishing a workout when he was approached by Johnson, who had wrapped his wrist watch around his fist. (*Id.* at P 24.) Johnson, without word, warning, or provocation struck Ward on the right side of his face by his eye socket. (*Id.* at P 25.) Johnson then struck Ward in the jaw, knocking him unconscious. (*Id.*) Johnson then straddled Ward and continued to beat him while inmates tried to pull Johnson away and alert the correctional officers of the attack. (*Id.* at P 26.) When the correctional officers finally arrived and looked at Ward, they believed he was dead. (*Id.* at P 28.)

> n2 Johnson approached two other inmates and asked whether any guards were supervising the back portion of the yard. Both inmates informed Johnson he was not being supervised at the moment. (*Id.* at P 23.)

[*4]

B. Medical Treatment Following the Attack

After it was discovered that Ward was breathing, he was taken to the infirmary. (*Id.* at P 30.) At the infirmary, it was observed that Ward had lacerations on his face, a knot on his forehead three inches long and an inch and a half wide, and that his skin was discolored. (*Id.*) Infirmary personnel immediately requested that Ward be transferred to the hospital emergency room but the DCC Shift Commander denied that request. (*See id.* at P 31.) Ward was eventually taken to the hospital where it was determined that he had a broken nose, a dislocated jaw, damage to his eye, a shattered eye socket, numerous broken and missing teeth, other facial fractures, tissue draining, and severe bruises. (*Id.* at 33.) His appearance was characterized as "grotesque". (*Id.*) After four hours at the hospital, Ward was transferred back to the infirmary. (*Id.* at P 34.) He was not examined by a medical doctor at the infirmary but was given Motrin and Darvocet for pain, had two teeth extracted, and was placed on a liquid diet. (*Id.* at P 35.)

On July 11, 2004, Ward's mother and daughter visited the DCC without knowledge of the attack. [*5] (*Id.* at P 36.) They found Ward lying in the infirmary covered in blood and still wearing his clothes from the

attack. (*Id.* at P 37.) Additionally, Ward's head had swollen to what was approximated as three times its normal size. (*Id.*)

On July 19, 2004 Ward was examined by an oral surgeon who prescribed a soft food diet, Tylenol and Tylenol # 3 for the pain, as well as suggesting that Ward see another physician about the injuries to his nose and that he also see an ophthamologist for treatment of damage to his eye and eye socket. (*Id.* at P 41.) Despite the instructions and reports, the infirmary ordered Ward to start a regular food diet on July 20, 2004, removed his stitches, and released him back into the prison population. (*Id.* at P 42.)

C. Ward's Continued Requests for Medical Attention

On July 30, 2004 Ward made a medical request because his jaw broke again while he was eating solid food provided by DCC. (*Id.* at P 43.) He also complained of great pain in his face and eye. (*Id.*) Ward was provided no treatment in response to those complaints. (*Id.*) The next day Ward made another medical request, but aside from scheduling an appointment for August 2, 2004, no [*6] action was taken by the prison. (*Id.* at P 44.)

> n3 It is unclear from the Complaint to whom Ward was making medical requests.

At the August 2 appointment, Ward was told to take Naprosyn for his pain. (*Id.* at P 45.) He was also prescribed a consultation with an optometrist, rather than with an opthamologist as had previously been suggested. (*Id.*) On August 8, Ward made another medical request because he believed that exposure to the sun and bright lights was causing his face to swell. (*Id.* at P 46.) Ward reported in his request that the pain was so great he could not chew, eat, or move his mouth in any way. (*Id.*) In response to the request, a medical appointment was scheduled for four days later. (*Id.*) At his August 12 appointment, Ward was scheduled to see an optometrist, but given no pain medication. (*Id.* at P 49.) Ward was seen by the optometrist and given a prescription for sunglasses. (*Id.* at P 52.) The prison, however, never had that prescription filled. (*Id.*)

During these [*7] difficulties, Ward was finding the prison counselor, Defendant Davis-Barton, to be rude,

argumentative, and unhelpful. (*Id.* at P 53.) She instructed the correctional officer assigned to Ward to make no further calls for a medic for Ward for any reason. (*Id.* at P 55.) Davis-Barton also instructed Ward to make no further requests for medical attention. (*Id.* at P 56.) Still in pain and receiving no medical treatment, Ward reported to the infirmary again on August 23, 2004. (*Id.* at P 58.) He requested pain medication for "extreme pain" and also the liquid nutrition his mother had been sending him due to DCC's failure to provide him with the soft diet he had been prescribed. (*Id.*) None of his requests were granted. (*Id.* at P 59.)

Because Ward's condition had not improved and he had not been seen by a medical doctor since the day of the attack, his mother hired an attorney. (*Id.* at P 60.) Ward's counsel sent a letter to the Governor advising the Governor of Ward's situation. (*Id.* at P 61.) In response, Ward was admitted to the infirmary on September 2, 2004. (*Id.*) While in the infirmary, however, Ward was frequently not given his medication and sometimes [*8] not fed. (*Id.* at P 62.) n4 He was "placed in a 10' by 10' glass-enclosed cell and essentially ignored." (*Id.;* original emphasis.) Additionally, Ward was mocked by the guards due to the publicity brought on by a newspaper article that detailed his plight. (*Id.* at P 67.)

n4 Ward was also not allowed to shower or change clothes while in the infirmary. (D.I. 1 at P 63.) He was placed in the infirmary without any notification to his family. (*Id.* at P 65.)

On September 9, 2004, through an arrangement made by his attorney, Ward was permitted to be examined by an outside physician, Dr. Pasquale Fucci ("Dr. Fucci"). (*Id.* at P 68.) This was the first time Ward had been seen by a medical doctor since he was taken to the hospital on the day of the attack. (*Id.*) Dr. Fucci determined that Ward must be seen by an opthamologist and by an otolaryngologist. (*Id.* at P 69.) Dr. Fucci was concerned that further medical neglect could cause Ward to lose sight in his right eye. (*Id.*)

At the request [*9] of his attorney, Ward was finally released from the infirmary on or about September 11, 2004. (D.I. 1 at P 70.) In mid-September 2004, Ward was removed from the prison population and placed into isolation. (D.I. 1 at P 71.) In late September, Ward was transferred to Sussex County Correctional Institute. (*Id.*

at P 73.) On October 5, 2004, Ward was seen by Dr. David Larned, an oculoplastic surgeon who opined that Ward needed surgery. (*Id.* at P 74.) It has also been determined that Ward suffers from hearing loss and that he needs dental surgery. (*See id.* at P 75.)

Ward's Complaint in this case alleges that the Defendants violated his *Eighth Amendment* right to be free from cruel and unusual punishment. (D.I. 1 at PP 77-79.) Additionally, Ward claims that the Defendants intentionally violated his *First Amendment* right to freedom of speech. (*Id.* at PP 80-81.) He further alleges that his injuries are due to Defendants' customs, practices and policies (*id.* at PP 82-84) and that the willful actions of the state establish a violation of the *Due Process Clause of the Fourteenth Amendment* (*id.* at PP 85-90). Finally, Ward claims that the Defendants conspired to interfere [*10] with his civil rights. (*Id.* at P 92.)

## III. STANDARD OF REVIEW

*Federal Rule of Civil Procedure 12(b)(6)* permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." A motion to dismiss requires a court to accept as true all material allegations of the complaint. *See Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004).* A court may grant a motion to dismiss only if after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc. 221 F.3d 472, 481-82 (3d Cir. 2000).* The moving party has the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).*

## IV. DISCUSSION

### A. Ward's *Eighth Amendment* Claim

The Defendants move to dismiss Ward's *Eighth Amendment* claim on the grounds that they are not responsible for Ward's inadequate medical care and, further, that their failure to protect Ward from Johnson does not amount to cruel and unusual punishment. Because [*11] Ward has adequately alleged at this stage of the proceedings that the Defendants' denial of medical treatment and failure to protect amounted to cruel and unusual punishment, I will deny the Motion.

1. Failure to Provide Adequate Medical Care

Ward first alleges that the Defendants' denial of medical care violated his *Eighth Amendment* rights. Under the *Eighth Amendment*, the states have a duty to provide "adequate medical care to those it is punishing by incarceration." *West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978).* The Supreme Court has held that "in order to state a cognizable [*Eighth Amendment*] claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).* To meet this deliberate indifference standard, a plaintiff must show that a prison official consciously disregarded a substantial risk of serious harm. *See Farmer v. Brennan, 511 U.S. 825, 839, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).*

The Defendants first argue that they did not exercise deliberate indifference to Ward's medical needs because it is their contracted medical provider, First Correction [*12] Medical ("FCM"), which is responsible for providing adequate medical treatment. (D.I. 17 at P 2.) Defendants assert that any complaint concerning the quality of medical care must be brought against its contracted provider. (*Id.* at 5.) The Supreme Court has held, however, that "contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody." *West v. Atkins, 487 U.S. 42, 56, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988).* Therefore, the Defendants cannot escape liability simply because they contracted with FCM to provide medical services to prisoners in the State's custody.

The question then becomes whether Ward's allegations that the Defendants denied him medical services are sufficient to frame a claim of deliberate indifference to a serious medical need. The Third Circuit has identified several scenarios that meet the deliberate indifference standard, including "where prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate to undue suffering or the threat of tangible residual injury." *Spruill, 372 F.3d at 235* (citations omitted). Here, Ward alleges [*13] that he suffered from serious pain and, given his facial injuries and swelling, that his injuries were noticeable to the Defendants. (D.I. 1 at PP 36-37.) Despite orders from the infirmary, DCC failed to provide Ward with a soft food diet, which allegedly caused him to re-break his jaw. (*Id.* at P 43.) Ward also alleges that he was consistently denied his subsequent requests for medical attention, and,

even when those requests were honored, he was only given pain medication. (*Id.* at PP 43-45.) Additionally, he claims that defendant Davis-Barton's instructions that Ward's medical requests not be honored demonstrate that she and the guards following her orders "consciously disregarded" a substantial risk of serious harm to Ward. (*Id.* at PP 55-56.) Finally, the alleged facts in the Complaint can be construed to show that Ward's medical needs were "serious." "Extreme pain and real possibility of permanent injury" can qualify as a serious medical need if "fleshed out by further evidence" during discovery. *Spruill, 372 F.3d at 236.* In addition to the extreme pain Ward alleges, Dr. Fucci opined that further medical neglect could cause Ward to lose vision in his [*14] right eye. (D.I. 1 at P 69.) Ward will be given the opportunity to develop through discovery evidence to support the allegations in his Complaint. Therefore, to the extent Ward is alleging the denial of medical treatment violated his *Eighth Amendment* rights, the Motion to dismiss that claim will be denied.

2. Failure to Protect

The Defendants argue that Ward's claim regarding their failure to protect Ward from Johnson must fail because it does not meet the deliberate indifference standard. (D.I. 17 at 11.) The Defendants rely (*id.* at 10-11) on several cases that have dismissed *Eighth Amendment* claims on the grounds that officials did not have subjective knowledge of the threat posed to an inmate by a fellow inmate. *See Hemauer v. Jefferson County Corrections Dep't, 1999 U.S. App. LEXIS 1605, No. 98-5206, 1999 WL 96752, at *4 (6th Cir. Feb. 2, 1999)* (granting summary judgment where plaintiff failed to show defendants' knowledge of risk), *Baker v. Lehman, 932 F. Supp. 666, 671 (E.D. Pa. 1996)*(same); *Jones v. Kelly, 918 F. Supp. 74, 80 (W.D.N.Y. 1995)* (same).

Those cases, however, were all decided at the summary judgment stage, after the development of an [*15] evidentiary record. Moreover, I am bound to draw inferences in the plaintiff's favor based on the allegations in the Complaint. *Cf. Hamilton v. Leavy, 117 F.3d 742, 749 (3d Cir. 1997)* (reversing summary judgment against plaintiff because there were facts on record that "could be viewed by a factfinder as the sort of deliberate indifference to inmate safety that the Constitution forbids"). Construing the facts here in a light most favorable to Ward, I cannot hold that the Defendants

failure to protect Ward could not amount to the sort of deliberate indifference forbidden by the Constitution. The Defendants were aware of Johnson's erratic behavior, as evidenced by their decision to take him to the infirmary. (D.I. at PP 16-17.) Despite this awareness, when no one was at the infirmary, the guards released Johnson into the general prison population. (*Id.*) Additionally, the guards who were responsible for monitoring the yard when the attack occurred were inside, preoccupied with a computer. (*Id.* at P 22.) Therefore, Ward has adequately alleged that the Defendants' failure to protect amounted to deliberate indifference.

The Defendants also assert that they cannot [*16] be held liable without proof that they actually knew of and disregarded an excessive risk to inmate health or safety. *See Farmer, 511 U.S. at 837.* The Supreme Court in *Farmer* reasoned that an allegedly culpable official "must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.* The Defendants contend that the only factual allegation against Salas was that he was on duty the day of the attack, and, further, that the administrative Defendants, i.e., Commissioner Taylor, Bureau Chief Howard and Warden Carroll, are very unlikely to have had actual knowledge of the threat Johnson posed to Ward. n5 (D.I. 17 at 12.) In regard to Salas, Ward has adequately alleged that he had knowledge of the threat. I need not decide at this stage whether the administrative defendants had actual knowledge of the threat posed by Johnson or by the denial of medical treatment because Ward implicates them as defendants due to their alleged failure to train and maintain appropriate customs, practices, and policies.

N5 Defendants' brief does not make any contention that Davis-Barton cannot be liable.

[*17]

B. Failure to Train and Maintenance of Customs, Policies, or Practices

Defendants contend that Ward has failed to allege facts showing that his injuries are caused by Defendants' policies and a failure to train or maintain safe conditions. (D.I. 1 at P 83.) Both sides raise essentially the same arguments as those raised with respect to the *Eighth Amendment* claims. n6 Indeed, on those arguments, no further analysis would seem required. However, when dealing with supervisory defendants, as opposed to defendants who allegedly had direct knowledge of a serious threat to inmate safety, the standard for deliberate indifference is not the "actual knowledge" standard required in *Farmer. See Beers-Capitol v. Whetzel, 256 F.3d 120, 135 (3d Cir. 2001).* Instead, for Ward to succeed on a claim against supervisors based on prison policy or practices, he must identify a specific policy or practice that the supervisor failed to employ and he must show that: (1) the existing policy or practice created an unreasonable risk of the *Eighth Amendment* injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) [*18] the injury resulted from the policy or practice. *Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989).*

n6 Defendants here assert that inadequate medical treatment was provided by the medical contractor and not the defendants. Additionally, defendants argue that they must have taken affirmative action, if they are to be liable under this claim. Ward argues the "deliberate indifference" standard can still be met when the constitutionally cognizable harm is great and there is failure by supervisory officials to respond. Even without adopting Ward's position, Davis-Barton's active role in allegedly instructing Ward not to make medical requests is a satisfactory allegation at this stage of the proceedings. Moreover, the Third Circuit has stated that plaintiffs like Ward cannot be "expected to know without discovery exactly what training policies were in place and how they were adopted". *Carter v. City of Philadelphia, 181 F.3d 339, 358 (3d Cir. 1999).*

In his Complaint, Ward alleges [*19] that the Defendants failed to properly train and supervise DOC personnel so as to protect inmates' safety and physical well-being and to maintain safe conditions, and that Defendants failed to adopt and properly implement practices and policies so as to protect inmates' safety and physical well-being. (D.I. 1 at P 83.) Ward further alleges that the supervisors failure to correct these risks resulted in his injuries. (*Id.* at P 84.) Therefore, the first and fourth prongs of the *Sample's* test are satisfied.

Though the allegations with respect to the second and third prongs fo the *Sample* test are not as plainly met,

there are sufficient allegations to permit further development of the record. *See Carter v. City of Philadelphia, 181 F.3d 339, 358 (3d. Cir. 1999)* (reversing district court's dismissal of plaintiff's claim because requiring plaintiff to identify a policy and attribute it to a supervisor at the discovery stage would be "unduly harsh.").

Finally, the Defendants move to dismiss the policy-and-practice claim based on the affirmative defense of qualified immunity. (D.I. 17 at 16.) Under the doctrine of qualified immunity, "government officials performing [*20] discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).* The Defendants have the burden of establishing that they are entitled to such immunity. *See Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 726 (3d Cir. 1989).* Unlike the actual knowledge test of *Farmer,* the Defendants must make the objective showing that a reasonable person in their position at the relevant time "could have believed, in light of clearly established law, that the alleged conduct comported with established legal standards." *Id.*

The issue, therefore, is whether the Defendants' conduct was objectively reasonable, and, more specifically, whether prison officials in the Defendants' positions could have believed that their conduct did not expose Ward to risk of serious medical harm. I have already held that Ward has adequately alleged actual knowledge on the part of the Defendants under the *Farmer* test. Because it has been determined that Ward has adequately [*21] alleged that Defendants' conduct meets the deliberate indifference standard, the same conduct cannot be objectively reasonable and thus the Defendants' qualified immunity defense cannot bar relief at this stage. *See Carter, 181 F.3d at 356* (holding that if plaintiff succeeds in establishing that defendants acted with deliberate indifference to constitutional rights, then defendants' conduct was not objectively reasonable and qualified immunity defense is not available).

C. Ward's *First Amendment* Retaliation Claim

Defendants move to dismiss Ward's *First Amendment* retaliation claim. (D.I. 17 at 13). Ward alleges that Defendants intentionally violated his *First Amendment* rights by punishing him without justification

for requesting medical attention and filing a prison grievance. (D.I. 1 at P 81). Because Ward has adequately alleged the elements of a *First Amendment* retaliation claim, the Motion is denied.

A prisoner alleging a retaliation claim must show: (1) constitutionally protected conduct; (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the [*22] exercise of his constitutional rights and the adverse action taken against him. *Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).*

First, the filing of lawsuits and grievances and contact with newspapers are protected by the *First Amendment. See id.* (filing complaints is protected); *Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002)*("Falsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the *First Amendment's* guarantee of free access to the courts."). As to the second requirement for a retaliation claim, Defendants assert that Ward's transfer was for his own safety and thus not an "adverse action". (D.I. 17 at 12.) Defendants further argue that Ward had no liberty interest in remaining in the general prison population, thus he was not deprived of any constitutional right. (*Id.*) Ward, however, alleges that in addition to the transfer, the Defendants also punished him by refusing his requests for medical care and failing to provide him with food and other requirements. (D.I. 1 at PP 80-81.) Further, the Defendants' reliance on Ward's lack of liberty interest is misplaced. "The law of this circuit [*23] is clear that a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges he was denied." *Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).* Thus, since Ward does not have to prove a liberty interest, nor did he allege that the transfer was the sole retaliatory measure taken by the department, the Defendants' arguments denying there was an adverse action fail at this preliminary stage.

Third, in order to succeed on a *First Amendment* retaliation claim, a plaintiff must show that the Defendants' actions were motivated by "a desire to punish an individual for the exercise of a constitutional right." *Thaddeus-X v. Blatter, 175 F.3d 378, 386 (6th Cir. 1999.)* The Defendants claim that Ward's transfer was done for safety reasons and not because he exercised his *First Amendment* rights, and therefore Ward fails to meet the

causation requirement. As noted above, Ward claims additional actions by the Defendants, aside from the transfer, were undertaken in retaliation. Additionally, Ward claims that the transfer itself was retaliatory. (*See* D.I. 22 at 18.) Viewing the facts in his favor, as I must [*24] on this Motion, his allegations of causation are sufficient.

Because all three requirements of a *First Amendment* retaliation claim are adequately alleged, I will deny the Defendants' Motion to dismiss this claim.

D. Ward's Substantive Due Process Claim Asserting a State Created Danger.

Finally, Defendants move to dismiss Ward's claim that the State violated his substantive due process rights. Ward alleges that the Defendants, by acting in willful disregard for his safety, created an opportunity for danger that otherwise would not have existed and thus acted in a manner shocking to the conscience and violating the *Due Process Clause of the Fourteenth Amendment*. (D.I. 1 at P 89.) The Defendants challenge this claim by correctly asserting that Ward cannot rely on substantive due process rights when the *Eighth Amendment* is more specifically tailored to the alleged violations of his rights. (D.I. 17 at 15-16.)

The Supreme Court has held that when there is an "explicit textual source of constitutional protection" against physically intrusive governmental conduct alleged by a plaintiff, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide [*25] for analyzing these claims." *See Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)* (holding that claim of excessive force used by officers in making arrest must be brought under more directly applicable *Fourth Amendment* and not *Fourteenth Amendment*); *Whitley v. Albers, 475 U.S. 312, 327, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)* (holding that the "*Eighth Amendment*, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners."). Because Ward is a convicted inmate, the treatment he alleges must be challenged under the *Eighth Amendment*, and thus the

Defendants' motion to dismiss the substantive due process claim will be granted. n7

n7 In his response to Defendants' motion to dismiss, Ward agrees that he has failed to allege a conspiracy under *42 U.S.C. § 1985* as originally contested in his Complaint. Therefore, the motion to dismiss this portion of the Compliant is granted. (D.I. 22 at 22.)

Defendants also raise the defense of sovereign immunity under the *Eleventh Amendment*. (D.I. 17 at 16-18.) To the extent Ward is suing the individual Defendants in their official capacities the claims are dismissed. Since the Department "is an agency of the State of Delaware" and is protected by the *Eleventh Amendment*, the claims against the Department are also dismissed. *Evans v. Ford, 2004 U.S. Dist. LEXIS 17967, No. Civ.A.03-868, 2004 WL 2009362, at *4 (D. Del. Aug. 25, 2004)*.

Additionally Defendants argue that they cannot be held liable under the doctrine of respondent superior. (D.I. 17 at 19.) Ward alleges, however, that he is not relying on the doctrine, which is consistent with allegations that he is suing the Defendants in their individual capacities. (D.I. 22 at 24.) At this stage in the proceeding, he has alleged adequate claims against the Defendants. Accordingly, he will have the opportunity to further develop those allegations in discovery.

[*26]

V. CONCLUSION

Accordingly, the Defendants' Motion will be granted as to the conspiracy and substantive due process claims and as to any claims against the Department and against the individual Defendants in their official capacities. In all other respects, the Motion will be denied.

**EXHIBIT "C"**

7 of 11 DOCUMENTS

**IDA WASHINGTON, Plaintiff, v. WILMINGTON POLICE DEPARTMENT, a
governmental entity of the City of Wilmington, the CITY OF WILMINGTON, a
municipal corporation of the State of Delaware, and OFFICER CUNNINGHAM,
Badge No. 114, Defendants.**

**C. A. No. 92C-05-159**

**SUPERIOR COURT OF DELAWARE, NEW CASTLE**

*1995 Del. Super. LEXIS 472*

**June 22, 1995, Date Submitted
September 18, 1995, Date Decided**

**SUBSEQUENT HISTORY:**       [*1]   Released for
Publication by the Court November 7, 1995.

**DISPOSITION:**       Upon Defendant's Motion for
Summary Judgment: Granted in part, Denied in part.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Standards >
Genuine Disputes*
*Civil Procedure > Summary Judgment > Standards >
Materiality*
[HN1] In order to succeed on a motion for summary
judgment, movants must show that there is no genuine
issue as to any material fact, and that defendants are
entitled to judgment as a matter of law. Del. Super. Ct. R.
Civ. P. 56(c). The court's role is to identify disputed
factual issues whose resolution is necessary to decide the
case, but not to decide those issues. Thus, the court
accepts as established all undisputed factual assertions
made by either party, and accepts the nonmovant's
version of any disputed facts. From those accepted facts,
the court draws all rational inferences which favor the
nonmoving party.

*Governments > Local Governments > Claims By &
Against*
*Governments > State & Territorial Governments >
Claims By & Against*
*Torts > Public Entity Liability > Immunity > General*

*Overview*
[HN2] *Section 4011(a)* of the Delaware County and
Municipal Tort Claims Act, *Del. Code Ann. tit. 10, §
4010 et seq.*, provides that except as otherwise expressly
provided by statute, all governmental entities and their
employees shall be immune from suit on any and all tort
claims seeking recovery of damages.

*Governments > Local Governments > Claims By &
Against*
*Torts > Public Entity Liability > Immunity > General
Overview*
[HN3] In *§ 4011(b)* of the Delaware County and
Municipal Tort Claims Act, *Del. Code Ann. tit. 10, §
4010 et seq.*, there are six enumerated examples of the
range of activities for which local governmental entities
are immune. The statute provides that this list is inclusive
rather than exclusive.

*Governments > Local Governments > Claims By &
Against*
*Torts > Public Entity Liability > Immunity > General
Overview*
*Torts > Public Entity Liability > Liability > State Tort
Claims Acts > Exclusions From Liability*
[HN4] Section 4012 of the Delaware County and
Municipal Tort Claims Act, *Del. Code Ann. tit. 10, §
4010 et seq.*, provides three exceptions to the broad grant
of tort immunity.

*Governments > Local Governments > Claims By &*

1995 Del. Super. LEXIS 472, *1

*Against*

Torts > Public Entity Liability > Immunity > General Overview

[HN5] The activities enumerated in § 4012 of the Delaware County and Municipal Tort Claims Act, *Del. Code Ann. tit. 10, § 4010 et seq.*, are an exclusive list and are the only activities to which municipal immunity is waived.

Governments > Local Governments > Claims By & Against
Torts > Public Entity Liability > Excessive Force
Torts > Public Entity Liability > Liability > Vicarious Liability

[HN6] A municipality is an entity that can only act through the actions of its employees and agents.

Governments > Local Governments > Claims By & Against
Torts > Damages > Compensatory Damages > Property Damage > General Overview
Torts > Public Entity Liability > Liability > General Overview

[HN7] *Section 4011(c)* of the Delaware County and Municipal Tort Claims Act, *Del. Code Ann. tit. 10, § 4010 et seq.*, provides that an employee may be personally liable for acts or omissions causing property damage, bodily injury or death in instances in which his or her governmental entity is immune under this section, but only for those acts which were not within the scope of employment or which were performed with wanton negligence or willful and malicious intent.

Governments > Local Governments > Claims By & Against
Governments > Local Governments > Employees & Officials

[HN8] In order for an officer's conduct to be found to be "wanton", his conduct must reflect a "conscious indifference" or an "I don't care attitude." The question of wanton conduct is ordinarily reserved for the trier of fact. The court may only grant judgment as a matter of law if it can draw but one inference from the uncontroverted facts.

**COUNSEL:** Shawn Dougherty, Esquire, Berkowitz, Schagrin, Coonin, Cooper & Dougherty, P.A., Wilmington, Delaware, Attorney for Plaintiff.

William J. Rhodunda, Jr., Esquire, City of Wilmington Law Department, Wilmington, Delaware, Attorney for Defendants.

**JUDGES:** Judge Susan C. Del Pesco

**OPINION BY:** Susan C. Del Pesco

**OPINION**

MEMORANDUM OPINION

DEL PESCO, Judge

This action arises out of an incident in which it is alleged that Officer Robert Cunningham of the City of Wilmington Police Department ("Officer Cunningham") used excessive force on the plaintiff, Ms. Ida Washington ("Washington") during a police stop. Washington filed suit against Officer Cunningham, the City of Wilmington Police Department ("Department"), and the City of Wilmington ("City"). Defendants have moved for summary judgment alleging: 1) the City of Wilmington is insulated from tort liability pursuant to the Delaware County and Municipal Tort Claims Act, *10 Del. C. § 4010 et seq.*; 2) the City of Wilmington Police Department is not amenable to suit; and 3) Officer Cunningham enjoys [*2] limited tort immunity under the Tort Claims Act, and Washington can not show, as a matter of law, that Cunningham's actions rose to the level of wantonness required under the statute to hold the Officer liable in tort. This is the Court's decision on the motion.

I.

FACTS

At this stage of the proceedings, the Court will view all available facts in a light most favorable to the nonmovant, here Washington.

On September 24, 1991, Washington was walking along Concord Avenue in Wilmington on her way to the Division of Social Services. Previously, Washington had suffered a stroke, which left her partially incapacitated. She walked with a limp. Washington needed the assistance of a cane. When folded up, the cane resembles a firearm. Officer Cunningham was on patrol on that date with his partner Officer Eugene Solge ("Officer Solge"). The two officers received a radio dispatch reporting a

woman with a gun in the area of Market and Vandever Streets. The description was of a black female, blue shirt, blue pants, walking with a limp and carrying a gun. Washington apparently fit the description.

The two officers arrived at the scene and saw Washington walking along the sidewalk. Washington [*3] claims that Officer Cunningham hurriedly approached her and told her to put her hands above her head and get up against the wall. Washington inquired as to why she was being stopped, and informed Officer Cunningham that she was physically unable to put her hands above her head. The officer yelled at her to comply with his orders, and forcibly pushed her against the wall. He held her against the wall by her shoulder, causing her pain in her arm. Officer Cunningham received her consent to search her purse, and he conducted the search without finding any weapons on Washington. Throughout the incident, Washington continued to tell Officer Cunningham that she was handicapped and that she had no weapons. Shortly after the incident, Washington suffered another stroke causing her to be hospitalized.

According to Officer Cunningham, when he approached Washington, he twice called out to her to stop, but she kept walking. The officer moved in front of her path and attempted to explain to her why she was being stopped, but she became hysterical and started yelling at him. She yelled that she wanted the badge numbers of the officers present. She then reached with her right hand into her purse, [*4] causing Officer Cunningham to "discreetly" grab hold of her arm to keep her from doing that. He then received her permission to search the purse, and he searched it, but found no weapons. Officer Cunningham denies pushing her up against the wall or forcibly restraining her.

Washington filed suit asserting a number of claims. Although not set out in counts, her complaint may be fairly read as setting forth a panoply of intentional torts including battery, assault, intentional infliction of emotional distress, false arrest, false imprisonment and invasion of privacy.

II.

## STANDARD FOR SUMMARY JUDGMENT

In support of their motion for summary judgment, defendants argue that: 1) the City of Wilmington is immune from suit pursuant to *Section 4011* of the

Delaware County and Municipal Tort Claims Act; 2) the City of Wilmington Police Department is not subject to being sued because it is merely a department of a municipal corporation, and therefore has no separate juridical identity, and 3) Officer Cunningham's conduct does not, as a matter of law, rise to the standard of "wanton negligence or willful and malicious intent" necessary to take his actions out of the protective umbrella of the [*5] Tort Claims Act.

[HN1] In order to succeed on their motion, defendants must show that there is no genuine issue as to any material fact, and that defendants are entitled to judgment as a matter of law. Super. Ct. Civ. R. 56(c). This Court's role is to identify disputed factual issues whose resolution is necessary to decide the case, but not to decide those issues. *Merrill v. Crothall-American, Inc., Del. Supr., 606 A.2d 96, 99 (1992)*. Thus, the Court accepts as established all undisputed factual assertions made by either party, and accepts the nonmovant's version of any disputed facts. *Id. at 99-100*. From those accepted facts, the Court draws all rational inferences which favor the nonmoving party. *Id. at 100*.

III.

## THE CITY OF WILMINGTON

Defendants claim that the City of Wilmington is immune from suit pursuant to the Delaware County and Municipal Tort Claims Act, *10 Del. C. § 4010 et seq.* ("the Act"). [HN2] *Section 4011(a)* of the Act reads, in pertinent part, "except as otherwise expressly provided by statute, all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery of damages. . .." [HN3] In subsection (b) of *§ 4011*, there [*6] are six enumerated examples of the range of activities for which local governmental entities are immune. The statute provides that this list is inclusive rather than exclusive. [1]

> 1    The relevant portion of the statute reads, "(paragraphs (1) through (6) of this subsection to which immunity applies are cited as examples and shall not be interpreted to limit the general immunity provided by this section." *10 Del. C. § 4011(b)*.

In [HN4] § 4012, the Act provides three exceptions to this broad grant of tort immunity. Washington does not allege that any of the three exceptions are implicated in

1995 Del. Super. LEXIS 472, *6

this case. [HN5] The activities enumerated in § 4012 are an exclusive list and are the only activities to which municipal immunity is waived. *Sussex County v. Morris, Del. Supr., 610 A.2d 1354, 1357 (1992).* Defendants contend that this broad grant of immunity is applicable to the case at bar. They cite to *Carr v. Town of Dewey Beach, D. Del., 730 F. Supp. 591 (1990)* and *Thomas v. Wilmington Police Dept.,* Del. Super., C.A. [*7] No. 92C-03-244, Bifferato, R.J. (June 3, 1994) as authority for the proposition that claims such as those put forth by Washington are covered under the Act. For example, in *Carr,* the District Court found that the Tort Claims Act was applicable to plaintiffs claims for malicious prosecution, abuse of process, false arrest, and intentional infliction of emotional distress. *730 F. Supp. at 602.* In *Thomas,* plaintiff sued the defendants for false arrest, false imprisonment and invasion of privacy following an arrest on an erroneous warrant. Letter op. at 3. This Court held that the Tort Claims Act precluded plaintiffs' claims where she could not show that the exceptions listed in § 4012 were applicable to her case. *Id.* at 7.

Plaintiff's sole argument in regard to the City's defense under the Act is that the City should be held responsible for Officer Cunningham's actions under the doctrine of *respondeat superior.* Washington's only authority for this contention is found in 63 C.J.S., *Municipal Corporations* § 757(b)(1950) which states, ". . .in the exercise of a ministerial or proprietary function. . . under the doctrine of respondeat superior, a municipal corporation [*8] is liable for the tortious acts or omissions of its officers, agents, and employees." The Court notes that in the annotation to this section, there are no Delaware cases cited which were decided after the enactment of the Act. Plaintiff also seeks to distinguish *Thomas* based on the fact that the plaintiff in *Thomas* did not allege excessive force, whereas Washington is alleging excessive force.

The Court is persuaded that the City of Wilmington enjoys municipal immunity from the tortious acts of Officer Cunningham. *Section 4011* is expansive in scope and covers "any and all tort claims." Conversely, the exceptions are narrowly drawn and are clearly inapplicable to the case at hand. There is no statutory exception for those tort claims involving "excessive force." Furthermore, there is no statutory exception for those claims based on the principles of *respondeat superior.* In fact, § *4011(c),* discussed below, expressly separates the tortious acts of employees of the

municipality from the municipality itself. [HN6] Furthermore, a municipality is an entity that can only act through the actions of its employees and agents. If it could be held liable for the acts of its employees under [*9] respondeat superior, the Tort Claims Act would be rendered meaningless. Washington can not point to a statutory exception enumerated in § 4012, therefore summary judgment is granted for the City of Wilmington.

THE WILMINGTON POLICE DEPARTMENT

Defendants claim that the Department is not amenable to suit because it is not a juridical entity. Plaintiff argues that so long as the City of Wilmington is a named defendant, it is proper to also have the Department in the suit. This Court was faced with this exact issue in the Thomas case, and found that "the Wilmington Police Department may not be sued as a separate entity." *Id.* at 6. The Court finds this decision persuasive. Furthermore, plaintiff's argument that the presence of the City in the suit allows for the presence of the Department is now moot due to the Court's decision to dismiss the City from the action. Summary judgment is entered in favor of the Wilmington Police Department.

OFFICER CUNNINGHAM

Defendants argue that Officer Cunningham should also be dismissed from the suit because his conduct can not be shown, as a matter of law, to rise to the level of culpability to take his conduct out of the protections of the Act. [*10] Washington counters that this is a fact issue and therefore not appropriate for summary judgment. [HN7] *Section 4011(c)* provides,

> An employee may be personally liable for acts or omissions causing property damage, bodily injury or death in instances in which his or her governmental entity is immune under this section, but only for those acts which were not within the scope of employment or which were performed with wanton negligence or willful and malicious intent.

[HN8] In order for Officer Cunningham's conduct to be found to be "wanton", his conduct must reflect a "conscious indifference" or an "I don't care attitude". *Foster v. Shropshire, Del. Supr., 375 A.2d 458, 461 (1977).* The question of wanton conduct is ordinarily

1995 Del. Super. LEXIS 472, *10

reserved for the trier of fact. *Eustice v. Rupert, Del. Supr., 460 A.2d 507, 509 (1983)*. The Court may only grant judgment as a matter of law if it can draw but one inference from the uncontroverted facts. *Id.* The Court is unable to draw such an inference.

Officer Cunningham argues that he was permitted to stop Washington based on the United States Supreme Court's opinion in *Terry v. Ohio, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)*. Assuming [*11] this is true, it is irrelevant because the issue before the Court is not whether to suppress the fruits of an illegal search. The issue is whether Officer Cunningham caused Washington to suffer bodily injury through acting in a wantonly negligent or intentionally malicious manner. Under the plaintiff's version of the facts, Officer Cunningham rushed up to a visibly handicapped woman, and after she stated she could physically not comply with his commands, he forcibly pushed her against a wall and restrained her. This evidence creates an issue of fact as to whether a jury could justifiably find that Officer Cunningham's conduct was wanton or malicious in nature. Summary judgment is denied for Officer Cunningham.

*IV.*

*CONCLUSION*

*Based on the foregoing, the motion for summary judgment of the City of Wilmington and the Wilmington Police Department is GRANTED. The motion for summary judgment of Officer Cunningham is DENIED.*

*IT IS SO ORDERED this 18th day of September, 1995.*

Judge Susan C. Del Pesco

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SHEILA LAND, Individually and as Guardian )
of RAZHON ANDRE BANKS, a minor and )
Charles J. Durante, Esq., Executor of the Estate )
of Charles Andre Banks, )          C.A. No.:  07C-160-UNA
)
        Plaintiffs, )          JURY TRIAL OF SIX
)          DEMANDED
    v. )
)
THE CITY OF DOVER and JOHN DOES 1-5 )
In their Individual and Official capacities, )
)
        Defendants. )

## <u>ORDER</u>

This matter having been brought before the Court by Daniel A. Griffith, Esquire of Marshall, Dennehey, Warner, Coleman & Goggin, attorneys for the Defendants; and the Court having considered the moving papers and any opposition filed thereto; and having heard the arguments of counsel; and for other and further good cause shown;

It is on this _____ day of _____, 2007, hereby **ORDERED** and **ADJUDGED** that Counts I, II and VI of Plaintiffs' Complaint be and hereby are **DISMISSED** pursuant to Fed. R. Civ. P. 12 (b)(6) for failure to state a claim upon which relief can be granted.

_____
                  J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SHEILA LAND, Individually and as Guardian | ) | |
| of RAZHON ANDRE BANKS, a minor and | ) | |
| Charles J. Durante, Esq., Executor of the Estate | ) | |
| of Charles Andre Banks, | ) | C.A. No.:  07C-160-UNA |
| | ) | |
| Plaintiffs, | ) | JURY TRIAL OF SIX |
| | ) | DEMANDED |
| v. | ) | |
| | ) | |
| THE CITY OF DOVER and JOHN DOES 1-5 | ) | |
| In their Individual and Official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I, Daniel A. Griffith, Esquire hereby certify that on the date indicated below a true and correct copy of Defendants' Notice of Motion to Dismiss Counts I, II and VI of Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6), Opening Brief in support of the Motion, and proposed Order were forwarded to the below named addressee via electronic filing:

Richard R. Wier, Jr., Esquire
Richard R. Wier, Jr., P.A.
Two Mill Road
Suite 200
Wilmington, DE  19806
*Attorney for Plaintiffs*

**MARSHALL, DENNEHEY, WARNER,**
**COLEMAN & GOGGIN**

*/s/ Daniel A. Griffith, Esquire DE ID 4209*
DANIEL A. GRIFFITH, ESQUIRE
Delaware Bar I.D. No. 4209
1220 N. Market Street
P.O. Box 8888
Wilmington, DE 19899-8888
(302) 552-4317
*Attorney for Defendants, The City of Dover*
*and John Does 1-5*

Dated: April 20, 2007